**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher M. Ellington,<br><br>Plaintiff,<br><br>v.<br><br>City of Mesa Police Officer P. Carroll; Officer K. Kennedy; Officer T. Dangerfield; Sgt. Redwing; Chief John Meza; and City of Mesa, a municipal entity,<br><br>Defendants. | No. CV-16-01255-PHX-NVW<br><br>**ORDER** |

    Before the Court is Defendants' Motion for Summary Judgment (Doc. 61), the Response, and the Reply. Plaintiff Christopher M. Ellington brings this damage action against the defendant City of Mesa police officers and the City of Mesa for unconstitutional arrest and excessive force in the arrest. The remaining defendants are Officers Carroll, Kennedy, Dangerfield and Redwing, and the Police Chief.

    No evidence is presented against the Police Chief, Lieutenant Redwing, or Sergeant Dangerfield, who were not present and did not participate in the arrest, so summary judgment will be granted in their favor. Nor is there any evidence of a City policy or practice, so summary judgment will be granted in the City's favor as well. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) ("[T]he language of § 1983, read against the background of the [ ] legislative history, compels the

conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.").

I. **LEGAL STANDARDS**

   A. **Summary Judgment**

A motion for summary judgment tests whether the opposing party has sufficient evidence to merit a trial. Summary judgment should be granted if the evidence reveals no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that might affect the outcome of the suit under the governing law, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

It is the moving party's burden to show there are no genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Upon such a showing, however, the burden shifts to the non-moving party, who must then "set forth specific facts showing that there is a genuine issue for trial" without simply resting on the pleadings. *Anderson*, 477 U.S. at 256. To carry this burden, the nonmoving party must do more than simply show there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id.* at 587. "A court must view the evidence 'in the light most favorable to the [non-moving] party.'" *Tolan v. Cotton*, — U.S. —, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 249).

B. **Unlawful Arrest**

Although the plaintiff bears the ultimate burden of proof on the issue of unlawful arrest, Defendants bear the burden of producing evidence that the arresting officers had probable cause for a warrantless arrest. *Dubner v. City & Cty. of S.F.*, 266 F.3d 959, 965

(9th Cir. 2001). "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." *Id.* at 966. Thus, the subjective beliefs of the plaintiff and the arresting officer are not relevant to the probable cause inquiry. Moreover, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The evidence must be viewed as it would be by a trained law enforcement officer, "not in terms of library analysis by scholars." *Id.*

## II. PROBABLE CAUSE FOR ARREST

### A. The Arrest

Ellington's neighbors obtained an ex parte Order Against Harassment against him on July 20, 2015. A.R.S. § 12-1809. Mesa police responded to the neighbor's call that Ellington had violated that order by mailing to him copies of court papers he had filed that were not expressly permitted by the statute. Ellington's "Demand for Contempt" accused the neighbor of using drugs, selling drugs, and threatening him, along with other misconduct including perjury, false reporting, and harassment. The "Demand for Contempt" was generally a response to the neighbor's complaint. It contained his extensive account of the long-standing conflicts between the neighbors and challenged the truthfulness of the neighbors' allegations.[1] The coversheet of the motion states, "I would like the court to: Dismiss the false IAH." (Doc. 62-1 at 19.) The relief it sought included to "[s]et a hearing" and "[d]ismiss and find illegitimacy in the IAH." (Doc. 62-1 at 29.) The acrimonious history included an earlier Order Against Harassment obtained by Ellington against the neighbors on October 16, 2014. (Doc. 62-1 at 22.)

---

[1] The record strangely does not contain the neighbors' complaint filed in the Justice Court. Thus, it cannot be seen what the neighbors alleged, what Ellington was responding to, or whether it stated a claim for Injunction Against Harassment under A.R.S. § 12-1809(C), (E), and (S). However, the motion can be decided without the underlying complaint.

The officers determined that Ellington violated the Order against him by mailing to the neighbors the copies of court papers he had filed. They believed, and their counsel argues, that the court filings were not authorized and therefore prohibited by the Order Against Harassment. Building on that, they argue that Ellington harassed the neighbors by mailing them copies of the court filings he had made.

When they knocked on Ellington's door late at night, he responded dressed only in boxer shorts. He stepped outside and closed the door behind himself. As Officer Carroll explained that they were responding to the complaint, he believed Ellington was an immediate threat because of his aggressive tone, physical posture, defiant demeanor, and agitation as he told the officer he had no right to be there. Officer Carrol told him he was under arrest and reached to grab his wrist to attempt to turn him around. They say Ellington turned to try to face the officer and showed some degree of resistance. The officers completed the control hold, braced him against the door, and handcuffed him. Ellington denies that he posed any threat.

The encounter was video-recorded. The video does not confirm that Ellington made any threatening moves. It happened so fast that a trier of fact could find it cuts against the officers' account and in favor of Ellington's account that he was immediately arrested without cause arising from the encounter itself. That alleged basis for arrest cannot be vindicated on summary judgment.

### B. Filing and Mailing Copies of the Court Papers did not Violate the Order

Ellington did not violate the Order Against Harassment by filing the court papers or by mailing copies of those papers to the neighbors. The Defendants summarily assert by citations to statutes and court rules that Ellington was forbidden from filing anything in the Justice Court but a demand for evidentiary hearing and was forbidden from mailing copies of his court filings to the neighbors. Extended exegesis of the statutes and court rules—with which the Defendants do not favor the Court—is not necessary to refute the Defendants' assertions.

Once an Order Against Harassment issues, a defendant "is entitled to one hearing on written request." A.R.S. § 12-1809(H). Ellington's motion is a "written request" for a hearing.

A defendant may not have multiple evidentiary hearings in opposition to the Order. From this limitation, the Defendants argue that a defendant is forbidden from filing anything other than a request for hearing. The statute does not say that or by implication forbid other motions. Specifically, the statute does not expressly or by implication forbid motions to dismiss.[2] Moreover, Rule 2, Arizona Rules of Protective Order Procedure, states that the Arizona Rules of Civil Procedure "apply when not inconsistent with these rules." The Civil Rules allow motions to dismiss. Ellington's motion was plainly and in substance an expressly permitted request for hearing. It was also a motion to dismiss, not forbidden by the statute or the rules.

Ellington's motion is not titled correctly. But filings must be construed according to their substance, whether or not they are titled correctly. This is especially true of filings by persons not represented by counsel. *See Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc) ("[W]e have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt."). Defendants object that the Justice Court motion was extraneous to the neighbors' Order Against Harassment. But that is asking too much of *in propria persona* litigants. Ellington's motion tells his side of the conflict between him and his neighbors; it is all part of his story and of the supposed untruthfulness of the neighbors' allegations. Litigants may not be punished for just disputing claims, absent frivolousness or bad faith proven at the end.

Ellington was also entitled and obligated to serve a copy of his court filing on the opposing party. Nothing in the statute or the Rules of Protective Order Procedure

---

[2] It is sadly common for judicial officers to grant ex parte Orders Against Harassment without scrutiny for the technical pleading and up-front evidentiary requirements of the statute. A motion to dismiss, without the burden of bringing witnesses to court for an evidentiary hearing, would plainly be warranted.

- 5 -

prohibits service of court filings, and Arizona Rule of Civil Procedure 5(d)(2) requires it. That Rule is adopted for protective order proceedings by Rule 2, Rules of Protective Order Procedure.

As a matter of law, Ellington's filing and serving his Justice Court papers was not a violation of the statute or a violation of the Order Against Harassment.

### C. Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Courts have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first and may grant qualified immunity on the basis of the second prong alone without deciding the first prong. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *James v. Rowlands*, 606 F.3d 646, 651 (9th Cir. 2010).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (internal quotation and alteration marks omitted). For a right to be "clearly established," there need not be a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 244.

In summary, state officers are not personally liable for money damages for violations of constitutional right under 42 U.S.C. § 1983 unless they knew they were violating that right or it was clearly settled that their actions violated that right. Though this Court is confident of its reading of the Arizona statute and rules, there are no reported cases closely on point. Therefore, it was not clearly settled that filing or service

of Ellington's Justice Court papers was not forbidden or in violation of the Order. The officers are entitled to qualified immunity on the claim of wrongful arrest.

### III. EXCESSIVE FORCE

The video-recording of the arrest at Ellington's door conclusively refutes his assertion that he was punched, kicked, kneed, or thrown to the ground or into a door jam. It shows a normal and justified means of arrest. Summary judgment must be granted against that claim.

After the handcuffing, the officers properly patted Ellington down as a search incident to arrest and took him to the patrol car. He was released at about 11:25 p.m. Ellington claims he was groped, sexually assaulted, and injured. There is no evidence of a physically identifiable injury.

Again, the video recording of the arrest and a second recording conclusively show Ellington was patted down, escorted to, and put in a patrol car with none of the abuse he claims. Ellington presents no evidence from which the accuracy of the video recordings could reasonably be doubted. *See Scott v. Harris*, 550 U.S. 372, 379-80 (2007) ("The videotape quite clearly contradicts the version of the story told by [plaintiff]. . . . When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

### IV. OTHER CLAIMS

Ellington did not file and serve timely notices of claim as required by A.R.S. § 12-821.01(A). Though he appears to have filed the notice of claim with the City of Mesa one day late, he failed to timely service the notice on the other defendants. Therefore, the state law claims are barred. Ellington does not respond to this argument or offer any evidence to refute it. Therefore, he has abandoned these claims. They are barred in any event.

Police officers generally have no duty of reasonable care in carrying out their work. There is no cause of action for mere negligence against police officers in Arizona.

*See Landeros v. City of Tucson*, 171 Ariz. 474, 475 (Ct. App. 1992) (holding that, "[a]s far as simple negligence is concerned, . . . the public interest mandates a rejection of" negligence actions against police officers). *See also Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972, 1017 (D. Ariz. 2012) (quoting *Clouse ex rel. Clouse v. State*, 199 Ariz. 196, 204, 16 P.3d 757, 765 (2001)) ("Police making discretionary decisions while acting in their official capacity in Arizona are only liable 'if the plaintiffs establish[ ] gross negligence.'"). Again, Ellington does not respond to the point. He has abandoned the claim of negligence as well.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. 61) is granted.

IT IS FURTHER ORDERED that the Clerk enter judgment against Plaintiff and in favor of Defendants and that the Plaintiff take nothing thereby.

Dated this 10th day of January, 2018.

_____
Neil V. Wake
Senior United States District Judge